**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| ROBERT E. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:15-cv-04136-NKL |
| | ) | |
| AMERICAN STANDARD INS. CO. | ) | |
| OF WISCONSIN, and | ) | |
| | ) | |
| PROGRESSIVE CASUALTY INS. CO., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendant American Standard Insurance Company of Wisconsin asks the Court to enforce a settlement it claims to have reached with Plaintiff Robert E. Davis prior to his filing of this lawsuit. [Doc. 9.] American Standard's motion to enforce is denied.

**I.      Facts[1]**

In February 2014, Davis filed suit in state court against American Standard and Progressive Casualty Insurance regarding an underinsured motorist claim. While that suit was pending, Davis' attorney, Madelyn Garrett, and Defendant American Standard's attorney, Michael Baker, had various oral and written exchanges in which they negotiated for a dollar figure that would settle the claim. They also scheduled Davis' deposition for June 10, 2015.

On June 5, 2015, Attorney Garrett told Attorney Baker that she had authority to settle for the amount of $10,580. Attorney Baker replied by email on June 9, saying:

---

[1]      American Standard pleaded settlement as an affirmative defense. [Doc. 8, p. 4.] The facts are drawn from the materials the parties filed in connection with the motion to enforce. [Docs. 9 and 13.] The parties agreed that the motion could be decided on the basis of those materials and that there are no factual disputes. [Doc. 30.]

American Standard accepts your settlement demand in the amount of $10,580 conditioned on a dismissal of American Std. with Prejudice, a full release of American Std. with respect to this accident and plaintiff's satisfaction of all liens, if any, out of the settlement funds. I do not have any lien notices in my file but I see on the medical bills that some of the bills were paid by Medicaid. As such, I will need a statement from the State of Mo. or Mo.Healthnet as to whether they are asserting a lien with respect to this settlement. If so, American Std. will issue a separate check out of the settlement funds to cover the lien. All settlement checks will be sent to you and you can pay the lien holder directly, if it turns out there is a lien. Also, as part of the settlement, I will need the attached form completed and signed by Mr. Davis. (I am assuming there is no Medicare lien with respect to this matter. If so, we will need a final payment letter from Medicare as to whether they are asserting a lien.)

I will not cancel the court reporter for tomorrow until I hear from you that these terms are acceptable. If they are, I will prepare a Release In Full, Stipulation of Dismissal With Prejudice and proposed Judgment of Dismissal With Prejudice and send them to you in the next few days for your review.

[Doc. 9-12, Exh. L, p. 2.]

Later in the day on June 9, Aaron Smith, who was Garrett's employer, called Attorney Baker to ask what had happened in the case. Attorney Baker said his client had accepted Plaintiff Davis' settlement offer with standard conditions as set forth in the acceptance email. Attorney Smith said he would speak with Attorney Garrett and get back in touch. The same afternoon, Attorney Smith emailed Attorney Baker, saying Plaintiff Davis would not appear at his scheduled deposition; that Davis was seeking new counsel; and that Davis had rejected Defendant's "counter offers." [Doc. 9, pp. 5-6, ¶17.] Mr. Smith did not explain why there was not a settlement agreement. Attorney Baker responded by email, saying his client had accepted the settlement demand. Attorney Baker tendered a settlement check and a proposed release form, but Attorney Smith responded that the case was not settled, and subsequently returned the check along with the release, unsigned.

2

Plaintiff Davis voluntarily dismissed his state court case and filed in this Court.

## II.    Discussion

A settlement agreement is enforceable as a contract when the parties "reach agreement on the essential terms of the deal." *Sheng v. Starkey Labs.,* 117 F.3d 1081, 1083 (8th Cir. 1997). *See also Matthes v. Wynkoop,* 436 S.W.3d 100, 107 (Mo. Ct. App. 2014) (same). A court will examine the "objective manifestations" of the parties in order to determine whether they reached a meeting of the minds. *Matthes,* 436 S.W.3d at 107; *Grant v. Sears,* 379 S.W.3d 905, 916 (Mo. Ct. App. 2012) (same). A motion to enforce a settlement agreement is a request for specific performance, and the party moving for enforcement must prove the existence of the agreement by clear, convincing, and satisfactory evidence. *Matthes,* 436 S.W.3d at 106; *Grant,* 379 S.W.3d at 914-15.

American Standard argues that the parties reached a meeting of the minds as to the only essential term—the amount of the payment—when Attorney Baker communicated to Attorney Garrett that American Standard accepted Davis' settlement demand of $10,580. American Standard points out that a settlement may still be enforceable, notwithstanding the need to work out minor details. [Doc. 10, p. 6.] Thus, American Standard describes the additional matters it brought up in that same communication to Attorney Garrett—dismissal with prejudice, a full release, Davis' satisfaction of all liens out of the settlement funds, obtaining a statement from the State of Missouri or Mo.Healthnet as to whether they would assert a lien out of the settlement, a form signed by Davis, and a final payment letter from Medicare if it turned out that Medicare was asserting a lien—as "perfunctory, non-essential matters that accompany all such settlements[.]" [*Id.*] Based on Missouri law, however, at least some of these additional terms were essential, not simply minor details. The cases on which Davis and American Standard rely,

*Grant* and *Matthes,* respectively, are dispositive.

In *Grant,* the Missouri Court of Appeals examined an exchange of settlement demands to determine whether the parties reached a meeting of the minds. The plaintiff, Grant, sent a demand letter to the insurance company, demanding payment of the insurance policy limits and an affidavit that no other coverage was available. The insurance company sent a letter dated December 21, 2009, accepting those terms and adding the additional terms that Grant provide final lien letters from Medicaid and verify whether Grant was a Medicare recipient. The trial court made the legal conclusion, which the parties did not dispute, that the December 21, 2009 letter was a counter-offer. On January 7, 2010, Grant sent the insurance company a two-sentence letter, stating that she "accept[ed] the policy limits," and asking the insurance company to please forward the settlement check to her attorney. Grant, 379 S.W.3d at 909. There was no mention of the additional terms contained in the insurance company's December 21, 2009 counter-offer. Several letters between the parties followed, about the insurance company's request for lien information. The trial court held that Grant's two-sentence acceptance letter of January 7, 2010 was an acceptance of all terms of the December 21, 2009 counter-offer, and entered an order enforcing settlement, including the lien provisions.

The Court of Appeals reversed, holding that "Grant's response to the December 21, 2009 letter hints at no sense of appreciation by Grant that [the insurance company's] references to lien information were intended as an additional material term of settlement." *Grant* at 379 S.W.3d at 918. Rather, Grant's simple acceptance of policy limits suggested that while Grant was willing to accept the settlement amount offered by the insurance company, she "was not aware of and did not agree to, any additional terms on which [the insurance company's] acceptance of the demand for payment of policy limits was conditioned." *Id.*

The case before this Court is essentially indistinguishable from *Grant*. Here, the parties' negotiations up to June 5, 2015 focused on finding a satisfactory dollar figure. Davis made a short and simple demand on June 5 for payment of $10,580. American Standard responded on June 9 by accepting the $10,580 demand, but also included additional terms, nearly identical to the ones that the Missouri appellate court in *Grant* held constituted were essential terms. American Standard's additional terms were not perfunctory and non-essential, they were material. The Court agrees that minor details may certainly be left to work out after a meeting of the minds is reached on essential settlement terms. Otherwise, it would be difficult for parties ever to settle without first preparing releases and other written materials incidental to their agreement. But terms involving the handling of Medicaid liens and the like cannot be perfunctory and non-essential ones in view of *Grant*, particularly not where, as here, the insurance company sought to add the term that payment of unspecified liens in an unspecified amount would be made from the $10,580 the insurance company had agreed to pay Davis.

American Standard further argues that its additional terms are routinely associated with settlement and therefore should not be considered material. But in *Grant,* the party seeking to enforce settlement argued that as a matter of public policy, the plaintiff should not be permitted to demand payment of policy limits without the implicit understanding that acceptance included the obligation to deal with lien holders and protect insurance companies, which are bound to report settlements with Medicare recipients. The Court of Appeals refused to "imply material terms into settlement agreements by judicial construct." *Id.* at 919. This Court likewise refuses to do so.

American Standard also seeks to draw a parallel between its argument and the result in *Matthes*, but *Matthes* supports Davis' position. In *Matthes*, the defendant's insurer negotiated

with Matthes' attorney. The insurer offered to settle Matthes' claims for $17,000, which included $10,000 in out-of-pocket recovery for Matthes. The attorney communicated the offer to Matthes, Matthes told his attorney to accept, and the attorney communicated the acceptance to the insurer. Matthes subsequently refused to sign a release, and hired a new attorney. The insurer filed a motion to enforce settlement, and the trial court held a hearing at which it took the testimony of Matthes' former attorney, over Matthes' objections based on hearsay and attorney-client privilege. The trial court granted the motion to enforce, and the Court of Appeals affirmed, holding that Matthes' objections were properly overruled.

The most obvious distinction between *Matthes* and American Standard's position is that *Matthes* ultimately involved a dispute about whether a written release had to be signed once the parties agreed on an amount, not a dispute about the addition of essential terms. Further, *Matthes'* recitation of the factual background reflects an additional distinction that is unhelpful to American Standard. When the trial court granted the motion to enforce, it rejected the first version of the release proposed by the insurance company. That version contained provisions pertaining to indemnification, release of other persons and entities, a confidentiality agreement, and payment of liens to medical providers. The trial court held that those provisions "were not part of the original settlement agreement, and that the release 'overreached in terms of what had been negotiated.'" 435 S.W.3d at 105. The trial court also concluded that there was insufficient evidence that Matthes had agreed to provide a Medicare reporting form to the insurer. Accordingly, the trial court stated that upon presentation of an amended release, it would dismiss the case as barred by the settlement agreement. When the parties did so, the case was dismissed. *Matthes,* therefore, supports denying the motion to enforce here. The addition of terms requiring medical liens be paid from the settlement agreement, etc., were essential terms.

Finally, American Standard points to the parties' exchanges after Attorney Baker sent the June 9 email to Attorney Garrett. American Standard argues that Davis' after-the-fact demands for a much larger dollar amount than $10,580; remarks that he was no longer interested in a quick settlement; and acknowledgment that insurance defense lawyers have a right to protect themselves from federal and state lien laws, suggests Davis was simply having buyer's remorse, not that Davis believed there had been no settlement as of June 9. [Doc. 22, pp. 4-5.] The argument does not change the analysis. As noted above, the determination of whether parties reached a meeting of the minds is based on a court's examination of the objective manifestations relating to settlement. "[I]t does not depend on the understanding or supposition of one of the parties." *Grant,* 379 S.W.3d at 916 (internal quotation and citation omitted)); *Matthes,* 435 S.W.3d at 107 (same). American Standard's speculation about Davis' understanding and its own supposition are irrelevant. In any event, Davis' post-hearing conduct can as easily be construed as consistent with his belief that there had been no settlement.

In view of the foregoing, American Standard has not proven the existence of an agreement to settle, by clear, convincing, and satisfactory evidence.

## III.     Conclusion

Defendant American Standard's motion to enforce settlement [Doc. 9] is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  November 2, 2015
Jefferson City, Missouri

Case 2:15-cv-04136-NKL   Document 31   Filed 11/02/15   Page 7 of 7